

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAY 1 1 2006
AT___O'CLOCK
Lawrence K. Baerman, Clerk - Binghamton

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*************************************

UNITED STATES OF AMERICA

v.

HUI GUO,

      Defendant.

Criminal Action No.
04-CR-544

PLEA AND COOPERATION
AGREEMENT

*********************************

      GLENN T. SUDDABY, United States Attorney for the Northern District of New York (by Sara M. Lord, appearing) and HUI GUO (with ~~Andrew Saffranko~~, Esq., appearing) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

    1.    In return for the consideration described below, HUI GUO agrees as follows:

        a.    The Defendant will withdraw his previous plea of "Not Guilty" and enter a plea of "Guilty" to Count 2 of Indictment 04-CR-544, charging him with unlawfully employing more than ten aliens in a twelve month period, in violation of 8 U.S.C. § 1324(a)(3)(A) and 18 U.S.C. § 2.

        b.    The Defendant consents to the entry of an order directing him to pay restitution in the following amounts to the following victims, whether or not the losses suffered by those victims resulted from the offense of conviction: [SEE ATTACHMENT].

c. The Defendant consents to the entry of an order directing him to forfeit certain assets to the United States, pursuant to the Forfeiture Allegations in Indictment #04-CR-544, as more fully set forth below.

d. The Defendant will cooperate with the United States in the investigation and prosecution of others, as more fully set forth below.

2. **Potential Penalties.** HUI GUO understands that his guilty plea to Count 2 of Indictment #04-CR-544 will subject him to the following potential penalties:

a. <u>Maximum term of imprisonment</u>: 5 years. (8 U.S.C. § 1324(a)(3)(A).

b. <u>Supervised Release</u>. In addition to imposing any other penalty, the sentencing Court may require the Defendant to serve a term of supervised release of up to 3 years, to begin at the expiration of any term of imprisonment imposed upon him. (18 U.S.C. § 3583) Should the Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to 2 years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above. Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

c. <u>Maximum fine</u>: $250,000. (18 U.S.C. § 3571) In its discretion, the Court may impose an alternative fine of the greater of $250,000 or twice the pecuniary gain to the Defendant or loss to any victim resulting from the offense of conviction. (18 U.S.C. § 3571(b) & (d))

d.  Mandatory Restitution: Pursuant to the Mandatory Victim Restitution Act, the sentencing Court must order that the Defendant pay restitution to any victim as more fully set forth in paragraph 1 above. (18 U.S.C. § 3663A)

e.  Forfeiture: The sentence imposed by the Court will include an order of forfeiture, as more fully set forth below. (18 U.S.C. § 982)

f.  Special Assessment: The Defendant will be required to pay an assessment of $100, which is due and payable at the time of sentencing. (18 U.S.C. § 3013) The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court at the time of his sentencing.

g.  Interest and penalties: Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

h.  Collateral Consequences: Conviction of a felony under this Agreement may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms and may result in deportation or removal from the United States. Deportation is an essentially certain, automatic, and unavoidable consequence for an alien convicted of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43).

i.  Forfeiture: The Defendant hereby forfeits, to the United States, all of his right, title and interest of any nature in any and all assets that are subject to forfeiture, as set forth in the Forfeiture Allegations in Indictment 04-CR-544 and, pursuant to Title 18, United States Code, Section 982(a)(6)(A) [as well as Title 8, United States Code, Section 1324(b)(1), Title 28, United States Code, Section 2461(c)] their interest, if any, in any and all property constituting or derived

from a violation or conspiracy to violate, section 274(a) . . . of the Immigration and Nationality Act [8 U.S.C. § 1324(a)] . . . the court shall order that the person forfeit to the United States, regardless of any provision or State law; (i) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense/s or which the person/s is convicted; and (ii) any property real or personal: (I) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted; and

> Title 18, United States Code, Section 982(a)(1), Defendant, for his conviction of an offense in violation of section 1956 . . . of this Title 18, shall forfeit to the United States any property real or personal, involved in such offense, or any property traceable to such property.

j. The Defendant consents to the entry of an order of forfeiture within the range of $4,000,000.00 to $5,000.000.00. The final forfeiture amount will be determined by the date of sentencing and based upon the results of the Defendant's financial statement and the polygraph test referenced in paragraph "l" below. The final forfeiture amount will include, but not be limited to, forfeiture of the assets identified in the forfeiture allegations of Indictment 04-CR-544, filed November 17, 2004 and the Bills of Particular, filed April 11, 2005, June 22, 2005 and August 31, 2005, which will be used to satisfy, at least in part, the final forfeiture amount.

j. In the event that any successful claim is made, by any third party, to the assets described above, the Defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The Defendant agrees that forfeiture of substitute assets as

authorized herein and in the Forfeiture Allegations of Indictment 04-CR-544, shall not be deemed an alteration of the Defendant's sentence.

k. The Defendant agrees to fully disclose his assets and will fully complete a "Financial Statement" and provide same to the U.S. Attorney's Office within seven (7) days of his plea of guilty. Defendant further agrees that he will represent that such disclosures and Financail Statements are complete, accurate, and truthful. Defendant will, following his plea and prior to sentencing, also submit to a polygraph test to determine his financial status. The results of said test will be used to determine the final forfeiture amount.

l. Defendant represents that the assets identified in the forfeiture allegations of Indictment 04-CR-544, filed November 17, 2004 and the Bills of Particulars, filed April 11, 2005, June 22, 2005 and August 31, 2005, are all assets in which he has an interest.

m. The Defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court. The Defendant further agrees not to assist any third-parties in contesting the forfeiture.

n. The Defendant waives his right to a jury trial on the forfeiture of assets. The Defendant waives all Constitutional, legal and equitable defenses to the forfeiture of assets, as provided by this Agreement, in any proceeding, including but not limited to any jeopardy defense

or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

       o.     The Defendant acknowledges that the Government may institute criminal, civil or administrative proceedings against any or all of the Defendant's forfeitable assets including, but not limited to substitute assets and any forfeitable assets not identified by the Defendant, and agrees not to contest any such forfeiture proceedings.

       p.     In the event the U.S. Attorney's Office determines that the Defendant has breached any condition of this Agreement, the Defendant agrees that none of the forfeited property shall be returned to him, nor shall he assert any claim to the forfeited property. The Defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends or associates.

3.     HUI GUO understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker* and *United States v. Fanfan*, 534 U.S. ___, 125 S. Ct. 738 (January 12, 2005). In imposing the sentence, the Court must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a). While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors.

4.     **Elements of the Offense.** HUI GUO understands that the legal elements of the offense stated in Count 2 of Indictment #04-CR-544, are as follows:

a. **Indictment 04-CR-544; Count Two (8 U.S.C. § 1324(a)(3)(A))** - That, during a twelve-month period, the Defendant knowingly hired for employment at least ten individuals, with actual knowledge that these individuals were aliens, who had come to, entered, and remained in the United States in violation of law.

5. **Factual Basis for the Plea.** HUI GUO admits the following facts, which establish his guilt on the offense stated in Indictment #04-CR-544:

a. Co-defendant Kun Fuk Cheng is associated with, and owns and operates six Chinese Buffet-style restaurants, located in the Northern District of New York and elsewhere. His role in each of the restaurants was obscured, however, with most of the restaurants appearing to be owned by a corporation and with friends or relatives, including the Defendant, identified as the officers. HUI GUO was identified as the President of the Everyday Buffet, Inc., which owned the Dragon Buffet restaurant and complex located at 1881 Central Ave., Albany, and was a partial owner of the Dragon Buffet restaurants at 1200 Ulster Ave., Kingston, and 2600 South Road, Rte. 9, Poughkeepsie. In addition to being the partial owner, the Defendant acted as the manager of both restaurants.

b. All of the restaurants offer a wide variety of food offerings, including Chinese, Mexican, Mongolian and other ethnic foods, as well as traditional American foods and assorted desserts, which are generally served at buffet stations in unlimited quantities for a reasonable price. While the service is buffet-style, the restaurants still rely on wait staff to handle seating, beverages and special orders; busboys to handle the large clientele; dishwashers to handle the necessarily rapid dishwashing; servers to superintend the buffet stations; and numerous cooks to produce the large and varied menu.

c. In order to accomplish all this profitably, the restaurants relied on undocumented workers, primarily Chinese but also Mexican aliens, who were in the United States illegally, for their employees. All of the restaurants, including the three which were associated with, or managed by, HUI GUO, were staffed and operated in the same manner. The restaurants were open six days a week, with the workers generally working twelve hours a day, or seventy-two hours a week. The cooks typically earned $1800-$2200 a month; the dishwashers received about $1500 a month; and the busboys and wait staff were paid in tips. The workers were paid no overtime and no workers compensation or tax witholding payments were made for them. In November 2004, when HUI GUO was arrested, there were approximately twenty-four employees working in the three restaurants with which he was associated. The U.S. Department of Labor has estimated that these employees are owed [HOW MUCH?] in back wages and overtime compensation.

d. While they worked at the various Dragon Buffet restaurants, the workers were housed in different locations that were owned by Kun Fuk Cheng and HUI GUO, and were transported between the houses and the restaurants in vehicles that they also owned. Workers at the 1881 Central Ave. Dragon Buffet were housed in the motel quarters that were part of the property located at 1881 Central Ave., Albany. The Kingston restaurant employees lived at 75-77 Elmendorf Ave., in Kingston, and the Poughkeepsie employees stayed at 52 Lent St., in Poughkeepsie.

e. By employing large numbers of undocumented workers, and paying them less than minimum wage with no benefits, and requiring them to work for as many as seventy-two hours a week, Kun Fuk Cheng and HUI GUO were able to generate extremely large profits from the restaurants. In order to conceal the ownership, sources, control, and extent of these substantial profits, they also engaged in extensive and elaborate financial transactions. These transactions

included the creation and use of a network of nominee bank accounts, through which cash proceeds from the restaurants were passed, and the purchases in cash of valuable assets, including houses and vehicles, and further concealing those assets under other names or corporate names, which assets included the residences at 75-77 Elmendorf Ave., Kingston and 52 Lent St., Poughkeepsie. In addition to the nominee accounts set up in the names of individuals, Kun Fuk Cheng and HUI GUO also used a corporation, Albany Realty Corp., and corporate account to conceal their ownership and control of at least $550,000 more in restaurant proceeds.

  f. The parties incorporate by reference, as further factual admissions by the Defendant, the stipulations as to sentencing factors and issues set forth below.

  k. The Defendant agrees that the sentencing Court may make factual findings, by a preponderance of the evidence, with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines (without regard to whether they are ultimately deemed to be "elements" of the offense of conviction), whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties. In making those findings, the Court may consider any reliable evidence, including hearsay. The Defendant consents to the determination of his sentence based upon such judicial fact-finding and knowingly and voluntarily waives any right to have any such sentencing factors or issues charged in the Indictment or presented to and determined by a jury beyond a reasonable doubt.

  6. The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above, shall be admissible and useable against the Defendant by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn.

The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with paragraph 11b below.

7. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees fully to disclose all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful. The Defendant certifies that he has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the Agreement and/or that may be imposed upon him by the Court. In addition, the Defendant promises that he will make no such transfers in the future.

8. In exchange for the plea of guilty to Count 2 of Indictment #04-CR-544 by HUI GUO and his continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

    a. At the time of sentencing, it will move to dismiss the remaining counts against the Defendant in Indictment #04-CR-544 for so long as the guilty plea and sentence on Indictment #04-CR-544 remain in effect.

    b. It will bring no further federal criminal charges against the Defendant relating to the conduct, committed before the date of this Agreement, which is described in Indictment #04-CR-544 and the Defendant's admissions above.

c.      If the guilty plea to Indictment #04-CR-544 is later withdrawn or vacated, the charges dismissed pursuant to this Agreement may be reinstated and prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the reinstatement of any such charges. The Defendant waives any defense or objection to the reinstatement and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

d.      Any self-incriminating information provided by the Defendant pursuant to his cooperation which was not previously known to the United States will not be used in determining the applicable Sentencing Guidelines range, pursuant to U.S.S.G. § 1B1.8.

e.      The U.S. Attorney's Office will not oppose the imposition of the least severe sentence permitted within the applicable Sentencing Guidelines range determined by the Court.

f.      The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within Indictment #04-CR-544, subject only to the limitations imposed by U.S.S.G. § 1B1.8.

9.      The U.S. Attorney's Office and HUI GUO agree to stipulate at sentencing to the statements set forth in the subparagraphs below. It is understood, however, that the agreement to stipulate cannot and does not bind the sentencing Court, which may make independent factual findings by a preponderance of the evidence and reject any or all stipulations presented by the parties. Such a determination that a stipulation is not binding on the Court will not be the basis for the withdrawal of a plea of guilty by the Defendant, and will not release either the U.S. Attorney's Office or the Defendant from any other portion of this Agreement, including any other stipulations

agreed to herein. To the extent the stipulations below do not reflect agreement on any factor or issue potentially affecting the advisory Sentencing Guidelines range applicable to the Defendant, the Defendant and the U.S. Attorney's Office each expressly reserves the right to advocate if, and how, any such factor or issue would apply under the Sentencing Guidelines.

    a. If the Defendant demonstrates "acceptance of responsibility" for the offense of conviction through the time of sentencing, the U.S. Attorney's Office will recommend a 2-level downward adjustment to the applicable Sentencing Guidelines range, pursuant to U.S.S.G. § 3E1.1(a). If the Defendant otherwise qualifies under U.S.S.G. § 3E1.1(b) and promptly enters a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently, the U.S. Attorney's Office will move for an additional downward adjustment of 1 level.

    b. The Defendant's Criminal History Category cannot be definitively determined prior to the completion of the presentence investigation.

    c. At the time the Defendant was arrested on November 18, 2004, he employed approximately twenty-four undocumented workers in the three restaurants with which he was associated.

10. Should the U.S. Attorney's Office determine that the Defendant, after the date of this Plea Agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has otherwise breached any condition of this Agreement, the U.S. Attorney's Office will have the right, in its sole discretion, to void this Agreement, in whole or in part. In the event of any such breach, the Defendant will not be permitted

to withdraw his guilty plea under this Agreement, but will thereafter be subject to prosecution for any federal criminal violation of which the U.S. Attorney's Office has knowledge, including but not limited to charges that this Office has agreed to dismiss in this Agreement.

    a.    The Defendant waives any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of any such prosecution.

    b.    Moreover, in connection with any such prosecution, any information, statement, or testimony provided by the Defendant, and all leads derived therefrom, may be used against him, without limitation.

    c.    In the event of any such breach by the Defendant, the U.S. Attorney's Office will have the right, in its sole discretion, to do the following, notwithstanding any contrary provision or stipulation in this Plea Agreement:

        i.    to advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range;

        ii.    to utilize any information, statement, or testimony provided by the Defendant in determining the applicable Sentencing Guidelines range, notwithstanding U.S.S.G. § 1B1.8;

        iii.    to decline to move for and/or to withdraw a motion for a downward departure under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e), even if the Defendant had provided "substantial assistance" to the United States prior to breaching any term of this Agreement;

      iv.  to recommend a specific sentence of imprisonment within or above the applicable Sentencing Guidelines range determined by the Court.

11. This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability; proceedings relating to the forfeiture of assets; or proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the Defendant.

12. The Court is neither a party to, nor bound by this Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

  a. If the Court rejects the provisions of this Agreement permitting the Defendant to plead guilty to Count 2 of Indictment #04-CR-544 in satisfaction of other charges, which provisions were negotiated pursuant to Fed. R. Crim. P. 11(c)(1)(A), the Court will afford the Defendant an opportunity to withdraw his plea of guilty prior to sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

  b. The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation, stipulation, or request. The U.S. Attorney's Office reserves the right to support

and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

13. The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions.

    a. The Defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his constitutional and other rights with defense counsel. The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

    b. The Defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence. The Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines (as explained further in paragraph 3 above) and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

14. **Waiver of Appeal and Collateral Attack.** The Defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case, including by a challenge based upon *United States v. Booker* and *United States v. Fanfan*, 534 U.S. __, 125 S. Ct. 738 (January 12, 2005)

and their progeny. The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of 18 months or less, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed. The Defendant acknowledges that the number of months specified above is not a promise of any particular sentence and is not binding on the Court. The Defendant agrees that, should the sentence imposed exceed 18 months, this would not permit him to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255.

15. No promises, agreements or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless memorialized in writing and signed by all parties. This Agreement, to become effective, must be signed by all of the parties listed below.

GLENN T. SUDDABY
United States Attorney
Northern District of New York

Dated: May 11, 2006    By: _____
Sara M. Lord
Assistant U.S. Attorney
Bar Roll No. 104163

Dated: May 11, 2006    _____
HUI GUO
Defendant

Dated: May 11, 2006

_____
Andrew Saffranko, Esq.
Attorney for Defendant
Bar Roll No.